1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE LEE CARPENTER, | Case No.  1:07-cv-00114-AWI-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| W.J. SULLIVAN, et al., | (ECF No. 147) |
| Defendants. | THIRTY-DAY OBJECTION DEADLINE |

## I.

## PROCEDURAL HISTORY

Plaintiff Willie Lee Carpenter ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 16, 2009.  This action is proceeding against Defendants Litton, Gonzales, and Pfeil for excessive force in violation of the Eighth Amendment and against Defendants Barajas, Ortiz, Salazar, and Martinez, for the failure to protect Plaintiff in violation of the Eighth Amendment.  Plaintiff's claim arises out of two separate incidents—one on June 6, 2004 that involved Defendants Barajas, Ortiz, Litton, and Gonzales, and the other on January 20, 2005 that involved Defendants Salazar, Martinez, and Pfeil.[1]

---

[1] The Court may eventually separate these two claims for trial under Federal Rule of Civil Procedure 42(b) to avoid prejudice to the parties as it appears that there is misjoinder of the parties.  While the plaintiff is the same, each claim involves two separate acts in which the defendants in those claims are not legally related to each other.  Fed. R. Civ.

1

On October 12, 2011, Defendants filed a motion for summary judgment. (ECF No. 147.) On February 21, 2012, Plaintiff filed an opposition.  (ECF No. 179.)  On February 23, 2012, Defendants filed a reply.  (ECF No. 180.)   On August 6, 2012, the Court issued an order permitting Plaintiff opportunity to withdraw his opposition and file an amended opposition in light of Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  (ECF No. 188.)  Plaintiff did not elect to file an amended opposition.  Defendants' motion for summary judgment has been submitted upon the record, and these findings and recommendations now issue.  Local Rule 230(*l*).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).    Defendants    do    not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."   In re Oracle Corp., 627 F.3d at 387

---

P. 20(b).  The Court has the ability under Federal Rule of Civil Procedure 42(b) to sever the trials in these situations to avoid prejudice.  The Court requests that prior to the pre-trial conference that the Defendants advise the Court of their position as to misjoinder and separate trials for each of Plaintiff's claim.

1   (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere

2   existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

3   252, 106 S.Ct. 2505 (1986)).

4       However, in judging the evidence at the summary judgment stage, the Court may not

5   make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless,

6   Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted).  The Court must

7   draw all inferences in the light most favorable to the nonmoving party and determine whether a

8   genuine issue of material fact precludes entry of judgment. Comite de Jornaleros de Redondo

9   Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011), cert. denied, 132 S.Ct. 1566

10  (quotation marks and citation omitted).  The Court determines only whether there is a genuine

11  issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se

12  prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations

13  omitted).

**III.**

**SUMMARY OF POSITIONS**

**A.    Plaintiff's Allegations[2]**

Plaintiff claims that his Eighth Amendment rights were violated when prison officials used excessive force against him and acted with deliberate indifference to his safety.  Plaintiff's amended complaint involves two separate incidents, one occurring on June 6, 2004 and the other on January 20, 2005.  Pl's Am. Compl., ECF No. 17.

**1.    June 6, 2004 Incident**

On the afternoon of June 6, 2004, Defendants Litton, Gonzales, Barajas, and Ortiz abandoned their posts in order to conduct a non-routine search of Plaintiff's cell.  Id. at 3.[3] Defendants outfitted themselves in cell extraction gear with riot control helmets, gas masks,

---

[2] Plaintiff's amended complaint is verified and therefore, it is treated as an opposing declaration to the extent it is based on Plaintiff's personal knowledge of specific facts which are admissible in evidence. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

[3] Unless otherwise noted, all page numbers in record citations will refer to the ECF page number in the upper right-hand corner of the page.

3

batons, pepper gas, tear gas, and grenade launchers. Id. at 4. A remote control opened Plaintiff's cell to allow Defendants access into the cell. Id. Without provocation, Defendant Litton began administering pepper gas directly into the face of Plaintiff and his cellmate. Id. Plaintiff became blinded and disoriented, and felt an intense burning sensation followed by suffocation and choking. Id. Within seconds, Plaintiff heard a deafening whistle and boom when Defendant Gonzales threw a model T-16 o/c chemical agent grenade into the cell. Id. Defendant Gonzales began spraying Plaintiff with more pepper gas while laughing and cursing at Plaintiff. Id. Plaintiff tried to cover his face with an empty laundry bag to help him breath. Id. Plaintiff was then ordered to crawl backwards to Defendants. Id. Defendant Gonzales placed his knee on the back of Plaintiff's neck, placed handcuffs on his wrists, and dragged Plaintiff out of his cell. Id. Plaintiff was "drenched" in o/c pepper gas chemical agent, was having difficulty breathing, and vomited. Id. The "intense burning" caused Plaintiff much pain and anguish, and seemed to amuse Defendants. Id.[4]

### 2. January 20, 2005 Incident

On the afternoon of January 20, 2005, while being escorted with a group of fourteen inmates, Plaintiff attempted to break up a "mutual combat fisticuffs" between two black inmates during an escort to the prison library. Id. at 8. One of the combatants struck Plaintiff several times and refused to stop his assault. Id. After receiving several "blows" Plaintiff retaliated in self-defense against the aggressive inmate. Id. Officers Diaz and Morales pepper sprayed Plaintiff and the aggressive inmate. Id. While Plaintiff attempted to comply with orders to get on the ground, Defendant Pfeil rushed upon Plaintiff and "executed a 180° degree power forward spinning technique" and struck Plaintiff with a steel baton on his left arm. Id. Defendant Pfeil used so much force that Plaintiff was knocked to the ground. Defendant Pfeil struck Plaintiff several more times on his arm, forehead, and jaw. Defendants Salazar and Martinez witnessed this entire incident and did nothing to stop Defendant Pfeil. After Plaintiff was on the ground, correctional staff escorted him to the medical department where he was decontaminated from the

---

[4] Plaintiff's amended complaint also contains a detailed account of the appeals process related to this incident, however, the Court will focus only on the facts relevant to Plaintiff's claims.

pepper-spray exposure and medically examined.

**B.     Undisputed Facts[5]**

1.      At all times relevant to this action, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") as a prisoner at California Correctional Institution ("CCI"), in Tehachapi, California.

2.      At all times relevant to this action, Defendant Ortiz was employed at CCI as a Correctional Officer.

3.      At all times relevant to this action, Defendant Gonzales was employed at CCI as a Correctional Officer.

4.      At all times relevant to this action, Defendant Litton was employed at CCI as a Correctional Officer.

5.      At all times relevant to this action, Defendant Barajas was employed at CCI as a Correctional Officer.

6.      At all times relevant to this action, Defendant Salazar was employed at CCI as a Correctional Officer.

7.      At all times relevant to this action, Defendant Martinez was employed at CCI as a Correctional Officer.

8.      At all times relevant to this action, Defendant Pfeil was employed at CCI as a Correctional Officer.

9.      On the afternoon of June 6, 2004, Defendants Litton, Gonzales, Barajas, and Ortiz went to Plaintiff's cell for a cell-search.

10.     Defendants Litton pepper-sprayed Plaintiff and Defendant Gonzales threw a pepper-spray grenade into Plaintiff's cell.[6]

11.     During the pepper-spray incident, Defendants Barajas and Ortiz stood behind Defendants Litton and Gonzales to provide additional support, if needed.

---

[5] The parties dispute the majority of relevant facts to this action.

[6] The facts leading up to the pepper-spraying are in dispute.

12.     After an individual is exposed to pepper spray, they will experience coughing, gagging, shortness of breath, and a burning sensation to the skin.

13.     Plaintiff was able to shower shortly after the pepper-spray incident.

14.     On January 20, 2005, while being escorted with a group of fourteen inmates, Plaintiff became involved in a physical altercation between two other inmates.[7]

15.     Defendants Pfeil, Salazar, and Martinez were at the scene of the January 20, 2005 incident.

16.     Defendant Pfeil struck Plaintiff with his steel baton.[8]

17.     Correctional Officer Diaz pepper-sprayed Plaintiff.

18.     After Plaintiff was on the ground, correctional staff escorted him to the medical department where he was decontaminated from the pepper-spray exposure and medically examined.

**C.      Summary of Defendants' Motion for Summary Judgment**

Defendants present five main arguments in their motion for summary judgment: 1) Defendants Litton and Gonzales did not violate Plaintiff's Eight Amendment rights because their conduct was not malicious and sadistic and the force used was de minimus that caused Plaintiff no injury; 2) Defendants Barajas and Ortiz did not violate Plaintiff's Eighth Amendment Rights because they were not deliberately indifferent to Plaintiff's health and safety; 3) The excessive force claim against Defendant Pfeil is barred because its success would necessarily imply the invalidity of Plaintiff's disciplinary finding of guilt; 4) Defendants Salazar and Martinez did not violate Plaintiff's Eighth Amendment rights because they were not deliberately indifferent to Plaintiff's safety; and 5) Defendants are all entitled to qualified immunity. Memo. of P.&.A. in Supp. of Defs' Mot. Summ. J. at 5, ECF No. 147-1 at 5.

///

///

---

[7] Whether or not Plaintiff used force on his own or in self-defense is a factual matter in dispute.

[8] The facts surrounding Defendant Pfeil's use of force are in dispute.

**D.     Summary of Plaintiff's Position**

Plaintiff argues that Defendants violated his Eighth Amendment rights because 1) Defendants Litton and Gonzalez initiated the pepper spray attack without provocation; 2) Defendants Salazar and Jones were aware that Plaintiff faced serious risk and were unconcerned with his health and safety; 3) Plaintiff's excessive force claim against Defendant Pfeil is not barred because Plaintiff's disciplinary guilty finding is moot; 4) Defendants Salazar and Martinez were aware that Plaintiff faced serious risk and failed to protect him; and 5) Defendants are not entitled to qualified immunity.

As to the June 6, 2004 incident, Plaintiff argues that material issues of fact exist as to whether Defendants Litton, Gonzales, Barajas, and Ortiz violated his Eighth Amendment rights. Plaintiff argues that Defendants attacked him without any provocation, whereas Defendants argue that Plaintiff disobeyed direct orders.  As to the January 20, 2005 incident, Plaintiff argues that there are material issues of fact regarding whether Defendants Pfeil, Salazar, and Martinez violated his Eight Amendment rights.  Plaintiff presents evidence that he was attempting to obey orders when Defendant Pfeil struck him and continued hitting him once he was on the ground, whereas Defendants present evidence that Plaintiff disobeyed orders and Defendant Pfeil used only the amount of force necessary.  Plaintiff argues these factual disputes create material issue of fact that precludes summary judgment on all claims.

**IV.**

**DISCUSSION**

**A.     Eighth Amendment Claims**

The issue is whether any material issues of fact exist as to whether Defendants violated Plaintiff's Eighth Amendment rights.  To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order to be held liable, each defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

2002). When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Hudson, 503 U.S. at 7.

A prison official's use of force to maliciously and sadistically cause harm violates the contemporary standards of decency. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." Gaddy, 130 S. Ct. at 1179 (quoting Hudson, 503 U.S. at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley, 475 U.S. at 321; accord Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79. The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force. Hudson, 503 U.S. at 9-10.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted).

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

### 1. June 6, 2004 Incident

#### a. Excessive Force—Defendants Litton and Gonzales

Material issues of fact exist as to whether Defendants Litton and Gonzales used excessive force, in violation of Plaintiff's Eighth Amendment rights. Defendants' declarations and statements of undisputed facts paint an entirely different story than Plaintiff's complaint and declaration. Defendants claim that force was necessary because Plaintiff refused to obey correctional officer orders. Litton Decl. ¶ 8; Gonzales Decl. ¶ 9. In contrast, Plaintiff clearly states that Defendant Litton administered the pepper spray "[w]ithout provocation" and "as soon as the cell door suddenly opened." Pl's Decl. ¶ 16, ECF No. 178 at 21. The credibility of these allegations is a material issue of fact to be determined by the finder of fact. Accordingly, summary judgment is not appropriate on the excessive force claim against Defendants Litton and Gonzales.

#### b. Failure to Protect— Defendants Barajas and Ortiz

Material issues of fact exist as to whether Defendants Barajas and Ortiz were deliberately indifferent to Plaintiff's health and safety, in violation of his Eighth Amendment rights. As discussed above, the parties dispute whether or not Plaintiff provoked the use of force on June 6, 2004. Whether or not Defendants use of force was justified directly relates to the issue of whether Defendants Barajas and Ortiz failed to protect Plaintiff. Accordingly, summary judgment is not appropriate on the failure to protect claim against Defendants Barajas and Ortiz.

///

///

///

1       **2.**      **January 20, 2005 Incident**

2       **a.**      **Excessive Force—Defendant Pfeil**

3       Plaintiff's excessive force claim against Defendant Pfeil is not necessarily barred.

4 Defendants argue that the excessive force claim against Defendant Pfeil is barred because its

5 success would necessarily imply the invalidity of Plaintiff's disciplinary hearing.   When a

6 prisoner's § 1983 damages action would implicitly question the validity of a conviction or

7 duration of his sentence, he must first challenge the underlying conviction or sentence.

8 Muhammad v. Close, 540 U.S. 749, 751 (2004) (citing Heck v. Humphrey, 512 U.S. 477 (1994)).

9       Here, Plaintiff was found guilty of mutual combat after the January 20, 2005 incident and

10 as a result lost ninety days of behavioral credits.   Defendants argue that a finding of excessive

11 force against Defendant Pfeil would necessarily imply the invalidity of Plaintiff's disciplinary

12 hearing.   However, Defendants failed to consider that a finding of excessive force would not

13 necessarily imply the invalidity of Plaintiff's disciplinary hearing.   The finder of fact need not

14 find Plaintiff innocent of mutual combat in order to find that Defendant Pfeil used excessive force

15 in violation of the Eighth Amendment.   On the contrary, even if Plaintiff engaged in a mutual

16 fistfight with another inmate, Defendant Pfeil's response to that situation may still have been

17 excessive and in violation of the Eighth Amendment.   In determining whether the use of force

18 was wanton and unnecessary, it is proper to consider factors such as the need for application of

19 force, the relationship between the need and the amount of force used, the threat reasonably

20 perceived by the responsible officials, and any efforts made to temper the severity of the forceful

21 response. Hudson, 503 U.S. at 7.   Plaintiff has submitted evidence that Defendant Pfeil beat him

22 repeatedly with a steel baton in the arm and head while he was on the ground and not resisting.

23 Accordingly, a material issue of fact exists as to whether Defendant Pfeil's use of force against

24 Plaintiff was excessive, and Plaintiff's claim is not barred.[9]

25 ///

26

27

28

---

[9] Plaintiff claims in his opposition to Defendants' motion for summary judgment that his ninety day loss of behavioral credits was restored, and therefore, Defendants' argument is moot.   It is unclear to the Court whether or not Plaintiff's credits were indeed restored, however, the Court need not address this argument in light of the fact that the claim against Defendant Pfeil is not barred.

### b.        Failure to Protect—Defendants Salazar and Martinez

Material issues of fact exist as to whether Defendants Salazar and Martinez were deliberately indifferent to Plaintiff's health and safety.  Again, Defendants' and Plaintiff's version of this incident tell two different stories.  Defendants present evidence that Defendants Salazar and Martinez "understood that it was necessary for Defendant Pfeil to use his baton because Plaintiff ignored correctional staff's orders to get down and continued fighting even after being pepper sprayed." Martinez Decl. 10, ECF No. 147-3 at 29; Salazr Decl. 9, ECF No. 147-3 at 26.  In contrast, Plaintiff presents evidence that he was in the process of getting down on the ground when Defendant Pfeil struck him with his steel baton.  Pl's Decl. ¶ 37.  Plaintiff also presents evidence that Defendant Pfeil kept hitting Plaintiff with the baton after Plaintiff was already knocked down the floor.  Id.  Accordingly, summary judgment is not appropriate on the issue of whether Defendants Salazar and Martinez failed to protect Plaintiff.

### B.        Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194, 200 (2001).   The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful.  Saucier, 533 U.S. at 200.  A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.  The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).  In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323

11

1   F.3d 1178, 1184 (9th Cir.2003).

2       **1.      June 6, 2004—Defendants Litton, Gonzales, Barajas, and Ortiz**

3       Under the first prong of the <u>Saucier</u> test, Defendants fail to prove that they did not violate

4   Plaintiff's Eighth Amendment rights.  As discussed above, the Court has found that there is a

5   triable issue regarding whether Defendants Litton, Gonzales, Barajas, and Ortiz violated

6   Plaintiff's Eighth Amendment rights.[10]  Thus, the second prong requires the Court to determine if

7   the law was clearly established at the time of the incident.

8       Under the second prong of the <u>Saucier</u> test, Defendants fail to prove that their alleged

9   conduct did not violate a clearly established right.  At the time of the incident on June 6, 2004, the

10  law was "sufficiently clear that a reasonable official would understand that what he is doing

11  violates that right," <u>Saucier</u>, 533 U.S. at 202 (citation omitted). With respect to excessive force

12  claims, the "inquiry ... is whether force was applied in a good-faith effort to maintain or restore

13  discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 7. The malicious

14  and sadistic use of force to cause harm always violates contemporary standards of decency,

15  whether or not significant injury is evidence. <u>Id.</u> at 9.  No reasonable officer would have believed

16  that pepper spraying an inmate so that he was drenched in chemical agent, without any

17  provocation, was force "applied in a good-faith effort to maintain or restore discipline...."  <u>Id.</u> at

18  7. Due to the existence of material factual disputes concerning what occurred during the pepper-

19  spray on June 6, 2004, Defendants Litton, Gonzales, Barajas, and Ortiz are not entitled to

20  qualified immunity.

21      **2.      January 20, 2005—Defendants Pfeil, Salazar, and Martinez**

22      Under the first prong of the <u>Saucier</u> test, Defendants fail to prove that they did not violate

23  Plaintiff's Eighth Amendment rights.  As discussed above, the Court has found that there is a

---

24  [10] Defendants contend that the "evidence shows that Litton and Gonzales did not use excessive force against
25  Carpenter, and that Barajas and Ortiz did not fail to protect Carpenter from harm, in violation of the Eighth
    Amendment." Defs' Mot. Summ J. at 18; ECF No. 147.  However, Defendants ignore the clear material issues of fact
26  regarding the use of excessive force in this incident. "'Because [the excessive force inquiry] nearly always requires a
    jury to sift through disputed factual contentions, and to draw inferences therefrom ... summary judgment or judgment
27  as a matter of law in excessive force cases should be granted sparingly.'" <u>Smith v. City of Hemet</u>, 394 F.3d 689, 701
    (9th Cir. 2005) (quoting <u>Santos v. Gates</u>, 287 F.3d 836, 853 (9th Cir. 2002)).  Here, summary judgment was clearly
28  not the appropriate vehicle to adjudicate Defendants' claims.  A trial is that appropriate vehicle.

triable issue regarding whether Defendants Pfeil, Salazar, and Martinez violated Plaintiff's Eighth Amendment rights.[11]   Thus, the second prong requires the Court to determine if the law was clearly established at the time of the incident.

Under the second prong of the <u>Saucier</u> test, Defendants fail to prove that they did not violate a clearly established right.  On January 20, 2005, no reasonable officer would believe that repeatedly striking an inmate, who is already on the ground, in the arm and head, with a steel baton was force "applied in a good-faith effort to maintain or restore discipline...."   <u>Id.</u> Accordingly, Defendants Pfeil, Salazar, and Martinez are not entitled to qualified immunity.

**V.**

**CONCLUSION AND RECOMMENDATION**

In conclusion, the Court finds that material factual disputes exist between the parties regarding whether Defendants violated Plaintiff's Eighth Amendment rights.

Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on October 12, 2011, be DENIED in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty **(30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

//

//

//

//

//

//

---

[11] Defendants contend that the evidence shows that Defendants Pfeil, Salazar, and Martinez did not violate Plaintiff's Eighth Amendment rights.  However, again, Defendants ignore the clear material issues of fact that exist as to the use of excessive force in this incident.

13

1    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

2    F.2d 1153 (9th Cir. 1991).

3

4

     IT IS SO ORDERED.
5

6

       Dated:   **June 17, 2013**
7
                                             _____
8                                            UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             14